IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| BROADSTRIPE, LLC, *et al.*, ) | |
| ) | Case No. 09-10006 (CSS) |
| Debtors. ) | |
| ) | Jointly Administered |
| ) | |
| NATIONAL CABLE TELEVISION ) | |
| COOPERATIVE, INC., ) | |
| ) | |
| Appellant, ) | Misc. No. 09-39-SLR |
| ) | |
| v. ) | |
| ) | |
| BROADSTRIPE, LLC, *et al.*, ) | |
| ) | |
| Appellees. ) | |

**MEMORANDUM ORDER**

At Wilmington this 25th day of March, 2009, having reviewed National Cable Television Cooperative, Inc.'s ("NCTC") motion for leave to appeal (D.I. 3) and amended emergency motion for stay of preliminary injunction order pending appeal and expedited appeal (D.I. 7), and the papers filed in connection therewith;

IT IS ORDERED that said motions are granted, for the reasons set forth below.

1. **Background.**[1] NCTC is a not-for-profit entity whose principal goal is to reduce the operating costs of its members, who are cable television providers ("cable providers"). (D.I. 10 at ex. A, ¶ 7) To this end, NCTC negotiates, on behalf of its members, master programming agreements ("master agreements") with satellite

---

[1] The facts in this background section are not in dispute.

program content providers ("content providers") pursuant to which content providers agree to provide content to participating members.[2] (*Id.* at ex. A, ¶ 7, 10)

2. Broadstripe, LLC ("Broadstripe") became a member of NCTC by executing the member agreement, dated July 14, 2000 ("the member agreement"). (*Id.* at ex. A, ¶ 8) The member agreement provides in relevant part:

> NCTC will advise all members of the availability of Master Agreements and will afford members an opportunity to participate, subject to additional eligibility requirements or exclusions . . . deemed appropriate by NCTC or provided in the applicable Master Agreements. If Member wishes to participate under a Master Agreement[,] Member will execute a System Participation Form . . . along with any other documents required in connection with the Master Agreement. . . . NCTC RESERVES THE RIGHT TO DENY PARTICIPATION UNDER ANY MASTER AGREEMENT TO ANY MEMBER, IN NCTC'S SOLE DISCRETION.

(D.I. 6 at ex. 9, ¶ 4) (emphasis original)

3. As of November 26, 2008, Broadstripe was a participant in multiple master agreements and owed NCTC $1,763,836.73 for cable programming received in November 2008 pursuant to those master agreements. (*Id.* at ex. 3) Broadstripe's payment was due on or before December 15, 2008. (*Id.*) Broadstripe did not pay by that date and, on December 26, 2008, NCTC sent a letter notifying Broadstripe that it was in default and would have its membership terminated on January 2, 2009, unless it became current on its obligations to NCTC. (*See id.* at ex. 7)

4. On December 31, 2008, Broadstripe submitted a System Participation Form to NCTC for the purpose of participating in the Fox News Network Affiliation Agreement ("the Fox News Master Agreement"). (D.I. 10 at ex. A, ¶ 38) The Fox News Master

---

[2]Members are also free to contract directly with content providers. (*See* D.I. 10 at ex. A, ¶ 10)

Agreement requires NCTC to perform audits and other duties relative to members participating thereunder. (D.I. 14 at 7:7-8:18) However, Broadstripe failed to submit an additional form required for participation in the Fox News Master Agreement. (D.I. 10. at ex. A, ¶ 40)

5. On January 2, 2009, Broadstripe and certain of its direct and indirect affiliates (collectively, "debtors") filed chapter 11 petitions. (*Id.* at ex. A, ¶ 5) On January 14, 2009, debtors commenced an adversary proceeding seeking declarations that the member agreement was (1) an executory contract that (2) obligated NCTC to afford Broadstripe the opportunity to participate in master agreements to which it was then a party and to which it wanted in the future to become a party. (Bk. Adv. Proc. 09-50024, D.I. 1) Debtors also moved that same day for a temporary restraining order to enjoin NCTC consistent with its desired declaratory relief. (Bk. Ad. Proc. 09-50024, D.I. 4). On January 15, 2009, after a hearing on debtors' motion, the bankruptcy court granted the motion in its entirety, decreeing that the member agreement is an executory contract and that NCTC is obligated to afford Broadstripe the opportunity to participate in master agreements and enjoined from excluding Broadstripe from participating in master agreements. (Bk. Adv. Proc. 09-50024, D.I. 14)

6. On February 19 and 20, 2009, the bankruptcy court conducted an evidentiary hearing on debtors' request to have the bankruptcy court extend the temporary restraining order's relief by issuing a preliminary injunction. (*See* Bk. Adv. Proc. 09-50024, D.I. 33-34) On March 10, 2009, the bankruptcy court issued findings of fact and conclusions of law and indicated that debtors were entitled to a preliminary injunction. (Bk. Adv. Proc. 09-50024, D.I. 39) On March 13, 2009, NCTC moved for a stay of the

imminent preliminary injunction order pending appeal. (Bk. Adv. Proc. 09-50024, D.I. 44) On March 16, 2009, the bankruptcy court denied NCTC's motion for stay and entered the preliminary injunction order. (Bk. Adv. Proc. 09-50024, D.I. 45)

7. **Analysis**. NCTC seeks leave to appeal the bankruptcy court's findings of fact and conclusions of law and its preliminary injunction order, which NCTC identifies as being interlocutory. The court may, in its discretion, grant leave to parties in bankruptcy to appeal interlocutory orders. See 28 U.S.C. § 158(a)(3) (district courts "have jurisdiction to hear appeals" from interlocutory orders and decrees "with leave of court"). Granting leave is appropriate where the proposed appeal concerns "(1) a controlling question of law[3] (2) as to which there is substantial ground for difference of opinion and (3) . . . an immediate appeal . . . may materially advance the ultimate termination of the litigation. . . ." *First Am. Bank of New York v. Southwest Gloves & Safety Equip., Inc.*, 64 B.R. 963, 967 (D. Del. 1986) (quoting 28 U.S.C. § 1292(b) and applying those factors to an appeal to the district court of a bankruptcy court's interlocutory order). Granting leave is further appropriate where doing so promotes "'the avoidance of harm to a party *pendente lite* from a possibly erroneous interlocutory order and the avoidance of possible wasted trial time and litigation expense.'" *Id.* (quoting *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 756 (3d Cir. 1974)).

8. The court concludes that granting leave here is appropriate. First, the proposed appeal concerns controlling questions of law, including whether the member

---

[3] A "controlling question of law" encompasses "at the very least every order which, if erroneous, would be reversible error on final appeal." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974).

agreement is an executory contract, what the effect is, if any, of NCTC's "sole discretion" on its obligations to perform, and the propriety of a mandatory injunction; if the bankruptcy court erred with respect to those questions, it would constitute reversible error on final appeal. Second, there is substantial ground for difference of opinion on these questions which, as far as the court's research has discovered, have not been squarely addressed in case law. Third, appeal at this juncture will materially advance the litigation because it will enable to court to resolve issues related to the member agreement's enforceability against NCTC, which is the gravamen of the adversary proceeding below. Finally, appeal at this juncture should avoid wasted trial time and litigation expense as well as harm to NCTC from incurring contractual obligations pursuant to the preliminary injunction order which, as will be discussed more fully below, is quite possibly erroneous. Accordingly, the court grants NCTC's motion for leave to appeal.

9. NCTC also moves for a stay of the preliminary injunction order pending appeal. To obtain a stay pending appeal, the movant must show that (1) it is likely to prevail on the merits of the appeal, (2) it will be irreparably harmed if the stay is denied, (3) its harm will exceed that of other parties if the stay is granted, and (4) the public interest favors a stay. *In re VF Brands, Inc.*, 282 B.R. 134, 137 (Bankr. D. Del. 2002) (citing, *inter alia*, *West Indian Co., Ltd. v. Gov't of Virgin Islands*, 812 F.2d 134, 135 (3d Cir. 1987)).

10. The court concludes that a stay pending appeal is appropriate, as NCTC

has identified "substantial issue[s] to raise on appeal;"[4] namely: (1) whether the member agreement bound NCTC to promote Broadstripe's participation in master agreements notwithstanding NCTC's sole discretion under the member agreement to refuse participation to members and, if not, whether the bankruptcy court could mandate that performance; and (2) whether a mandatory injunction was properly issued on the findings of irreparable harm as stated.

11. With respect to the member agreement (which the court assumes without deciding is an executory contract[5]), the court accepts the bankruptcy court's conclusion that prepetition executory contracts are enforceable by the debtor but not against the debtor. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513 (1984); *United States Postal Serv. v. Dewey Freight Sys., Inc.*, 31 F.3d 620, 624-25 (8th Cir. 1994) (emphasis original) (citations omitted); *see also In re FBI Distribution Corp.*, 330 F.3d 36, 43-44 (1st Cir. 2003) (during Chapter 11 proceedings, "a prepetition executory contract remains in effect and enforceable against the nondebtor party to the contract," but is unenforceable against the debtor-in-possession unless and until the contract is assumed); *In re Univ. Med. Ctr.*, 973 F.2d 1065, 1075 (3d Cir. 1992) (a nondebtor party to an executory contract cannot enforce contractual rights against a debtor without seeking relief from the automatic stay). However, while the member agreement

---

[4]*In re Countrywide Home Loans, Inc.*, 387 B.R. 467, 480 (Bankr. W.D.Pa. 2008).

[5]An executory contract is "'a contract under which the obligation of both the bankrupt and the other party are so far unperformed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other.'" *In re Gen. DataComm Indus., Inc.*, 407 F.3d 616, 623 (3d Cir. 2005) (quoting *Sharon Steel Corp. v. Nat'l Fuel Gas Distribution Corp.*, 872 F.2d 36, 39 (3d Cir. 1989)).

imposes certain obligations on Broadstripe, there are no similar obligations imposed on NCTC. NCTC retains discretion under the member agreement to refuse a member's participation in any given master agreement; a member has no contractual right to so participate. Therefore, under the injunction imposed by the bankruptcy court in this case, the contract at issue is not only being enforced against the nondebtor party, but its very provisions have been modified to give the debtor more rights under the contract than it would have absent bankruptcy. To put the point another way, NCTC is not asking to enforce an executory contract against debtors; it simply is asking that the contract only be enforced against it consistent with the actual language of the contract. None of the case law cited by the bankruptcy court imbues it with the authority to actually change the terms of the contract.[6]

12. With respect to the mandatory injunction,[7] for it to be proper, Broadstripe must demonstrate:

> (1) the reasonable probability of eventual success in the litigation and (2) that the movant will be irreparably injured pendent lite if relief is not granted. Moreover, while the burden rests upon the movant to make these two requisite showings, the . . . court "should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest."

*Bennington Foods LLC v. St. Croix Renaissance Group, LLP*, 528 F.3d 176, 179 (3d

---

[6]This is especially troublesome here, where the injunction has been written with extraordinarily broad language.

[7]A mandatory injunction is a writ issued by a court of equity commanding positive action. "The philosophy behind the use of injunctive relief is the recognition of the necessity to . . . compel conduct in those extraordinary situations where irreparable injury might result from delay or inaction." *United Bonding Ins. Co. v. Stein*, 410 F.2d 483, 486 (3d Cir. 1969).

Cir. 2008) (citations omitted). Regarding irreparable harm or injury specifically, a moving party "must demonstrate [a] 'clear showing of immediate irreparable injury, or a presently existing actual threat.'" *Prosser v. Springel*, 2008 WL 2368898, at *5 (D. Virgin Islands June 6, 2008). Also, the harm must be imminent and "must not be speculative and cannot 'occur in some indefinite future.'" *Id.* (citation omitted). Finally, "[t]he nature of the harm must be such that money damages alone cannot atone for it." *Id.* (citation omitted).

13. Moreover, and significant to the case at bar, "where the relief ordered by the preliminary injunction is mandatory and will alter the status quo, the party seeking injunction must meet a higher standard of showing irreparable harm in the absence of the injunction." *Id.* (citation omitted). *See also United States v. Spectro Foods Corp.*, 544 F.2d 1175, 1181 (3d Cir. 1976) ("The power to issue a preliminary injunction, especially a mandatory one, should be sparingly exercised."). Because the preliminary injunction here is mandatory, and because it also alters the status quo by depriving NCTC of its contractual right to refuse member participation in master agreements in its sole discretion, that higher standard applies here.

14. Broadstripe has not demonstrated that it can meet the higher standard for irreparable harm. Here, the bankruptcy court found that NCTC did not have "a legitimate basis upon which to deny Broadstripe participation rights under the Fox News Master Agreement or any other Master Agreement."[8] (D.I. 10 at ex. A, ¶ 93) The bankruptcy court went on to find that Broadstripe "does not currently have contracts for

---

[8] Of course, the member agreement arguably does not require NCTC to have any basis to deny such rights.

all programming that it currently . . . needs to obtain to service its customers, and certain contracts that it does have will expire over the next several months." (*Id.* at ex. A, ¶ 96) Upon this finding, and the finding that there are "substantial risks" to operating without enforceable programming contracts, the bankruptcy court found that "[t]he loss of programming and **potential** resulting loss of customers **could** irreparably jeopardize both Broadstripe's enterprise value and its prospects for reorganization in chapter 11." (*Id.* at ex. A, ¶ 100; *see id* at ex. A, ¶¶ 99, 101) (emphasis added) These findings, however, especially in light of the heightened harm standard, do not establish immediate, irreparable harm where Broadstripe is not precluded from entering into direct agreements with content providers and there is no finding that content providers have actually refused to enter into direct agreements or that the higher costs of direct agreements are specifically injurious.

15. The remaining factors also support a stay pending appeal. Without a stay of the preliminary injunction, NCTC will incur obligations vis-a-vis Broadstripe under any number of master agreements (including auditing duties under the Fox News Master Agreement) in contravention of its rights under the member agreement. This is actual, if not devastating, harm not compensable by money damages and so suffices to support a stay. Conversely, a stay of the preliminary injunction will leave Broadstripe in exactly the position it was in at the time it filed its petition – a member of NCTC authorized to participate in master agreements subject to NCTC's sole discretion. This is no harm at all.

16. The public interest factor does not weigh in favor of either party. On the one

hand, the court recognizes the concern of the bankruptcy court that NCTC's conduct[9] is arguably contrary to the goal of treating all similarly situated creditors in a similar fashion. A counterweight to this concern, however, is the recognition that the equitable powers of the bankruptcy court do have some legitimate limits, i.e., the ends do not always justify the means. Although bankruptcy law allows one-sided enforcement of executory contracts during that period of time before the debtor formally decides whether to accept or reject said contracts, there is a substantial question of law as to whether bankruptcy allows a court to rewrite executory contracts during this period of time in order to give a debtor rights not contemplated under said contracts.

17. **Conclusion**. Based on the foregoing, the court concludes that it is appropriate in the case at bar to grant leave to appeal and grant a stay of the bankruptcy court's preliminary injunction order pending appeal. Accordingly, NCTC's motions (D.I. 3 and 7, respectively) are granted.

IT IS FURTHER ORDERED that counsel for NCTC shall initiate a telephonic status conference in this case on **Thursday, March 26, 2009, at 9:00 a.m.**

_____
United States District Judge

---

[9] According to the bankruptcy court, NCTC declined to allow Broadstripe to participate unless Broadstripe brought current its fees.